**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Javier Portillo-Diaz,<br>Petitioner<br>-vs-<br>Charles L. Ryan, et al.,<br>Respondents. | CV-15-1172-PHX-JJT (JFM)<br><br>**Report & Recommendation**<br>**on Petition for Writ of Habeas Corpus** |

## I.  MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 25, 2015 (Doc. 1).   On November 5, 2015 Respondents filed their Response (Doc. 12).   Petitioner has not filed a reply, and the time to do so expired on December 8, 2015.  Respondents filed a Supplement on April 20, 2016 (Doc. 15), and the time for Petitioner to reply to the supplement expired on May 9, 2016.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A.  FACTUAL BACKGROUND

In March, 2010, the victim, Petitioner's step-daughter, who was then 17 years old, reported to the Albuquerque Police Department that Petitioner had been sexually abusing her from the age of four, until June 2009, when she moved to Phoenix, Arizona to live

1

with her "fiancé." Much of the abuse had occurred while they were living in Apache Junction, Arizona, before the family moved to Albuquerque. The fiancé reported that Petitioner was the father of the victim's child.

Because of purported threats from Petitioner, he was stopped by police officers and detained. While he was detained, Petitioner told one of the detectives that the child was probably his. Petitioner was arrested, but was eventually released. The Albuquerque Police advised the victim to contact the Apache Junction police to pursue charges.

The victim contacted the Apache Junction Police Department, and reported that Petitioner had begun abusing her at age four, and started having sex with her at age 12. Eventually a DNA test of Petitioner was conducted, and reported results consistent with his paternity. Eventually an arrest warrant was issued and Petitioner was arrested in Albuquerque. Petitioner refused extradition, but was eventually transported to Arizona on November 22, 2010. (Exhibit H, Present. Invest. at 2-3.) (Exhibits to the Answer, Doc. 12, are referenced herein as "Exhibit ___.")

**B. PROCEEDINGS AT TRIAL**

On June 17, 2010, Petitioner was indicted in Pinal County Superior Court on three counts of sexual conduct with a minor, based on three specific events, including: (1) first time digital penetration; (2) first time penile/vaginal intercourse; and (3) intercourse that resulted in conception. (Exhibit A, Indictment.) The state filed Allegations of Aggravating Circumstances (Exhibit B), including harm to the victim, abuse of position of trust, multiple acts over a prolonged period, criminal history and failure to rehabilitate, the need to protect potential victims, and the multiple offenses.

Counsel was originally appointed, but retained counsel was substituted in. (Exhibit C, Stipulation; Exhibit D, M.E. 3/28/11.)

On August 10, 2011, the parties participated in a settlement conference, and reached a tentative agreement. (Exhibit E, M.E. 8/10/11.) Eventually, the parties entered into a written Plea Agreement (Exhibit F) in which Petitioner agreed to plead "no

contest" to an amended Count 1, molestation of a child, and an amended Count 2, attempted molestation of a child.  The parties agreed to a 17 year sentence on Count 1, and lifetime probation on Count 2, and that Count 3 would be dismissed.

On August 16, 2011, Petitioner entered a plea of no contest in accordance with the Plea Agreement.  (Exhibit G, M.E. 8/16/11; Exhibit PP, R.T. 8/16/11.)  At Petitioner's change of plea, the court advised:

> If you decide to accept a plea agreement that will resolve your case you need to understand that you're giving up certain constitutional rights…You're giving up your presumption of innocence and your right to file an appeal.  However, you would still have a right to file what's called a petition for post-conviction relief within 90 days of sentencing.

(Exhibit S1-A, R.T. 8/16/11 at 3.)

The factual basis for the plea was founded upon Petitioner having touched the victim on the vagina with sexual motivation on two occasions, one between November 28, 2003 and November 28, 2005, and another between November 28, 2004 and November 28, 2006. (Exhibit PP, R.T. 8/16/11 at 6-7.)  The prosecution justified the no contest plea to the court by referring to the victim's statements that she believed Petitioner was intoxicated at the time of the offenses.

A Presentence Investigation (Exhibit H) was prepared recommending the agreed upon sentences.  On October 7, 2011, Petitioner was sentenced to the agreed upon 17 years flat time.  (Exhibit I, Sentence; Exhibit QQ, R.T. 10/7/11.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

/ /

/ /

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF
### 1.  First PCR Proceeding

On December 9, 2011, Petitioner filed a Notice of Post-Conviction Relief (Exhibit K).  Counsel was appointed (Exhibit L, Order 12/20/11), but eventually filed a Notice of Completion (Exhibit N) evidencing an inability to find an issue for review.  Petitioner was granted leave to file a *pro per* petition.  (Exhibit O, Order 11/14/12.)

On January 15, 2013, Petitioner filed a *pro per* PCR petition (Exhibit Q), arguing claims of (a) denial of counsel; (b) speedy trial violations; (c) jurisdictional violations; (d) abuse of discretion and judicial abuse; (e) double jeopardy; (f) plea agreement coerced; (g) abridgment of unspecified rights; (h) indictment duplicitous and wrongfully amended; (i) prosecutorial misconduct; (j) self-incrimination; (k)  plea agreement based on duress. However, the petition was returned to Petitioner for completion with the proper certification that all claims had been included.  (Exhibit U, Order 2/20/13.) Petitioner submitted a revised certification (Exhibit W), and the court directed a response.  (Exhibit X, order 3/1/13.)

In the interim, Petitioner filed a motion to supplement his petition (Exhibit S), but that motion failed to set out any proposed amendments or supplements.

Following the State's Response (Exhibit Z), Petitioner again moved to amend his petition to argue that he was not competent to enter a knowing and intelligent guilty plea, and had received ineffective assistance of counsel.  The motion to amend was denied. (Exhibit CC, Order 9/25/13.)

Petitioner did not reply in support of his petition.  (*Id.*)

On September 26, 2013, the PCR court: (1) rejected on the merits Petitioner's claims that the Arizona courts lacked jurisdiction, the double jeopardy claim, the duplicitous indictment claim, the *ex post facto* claim, the wrongful amendment claim and the claims of ineffective assistance of counsel; and (2) rejected on the merits and as precluded by Petitioner's no-contest plea his speedy trial claim, his prosecutorial misconduct, abuse of discretion, and judicial abuse claims.  Accordingly, the petition

4

was denied.  (Exhibit DD, Order 9/26/13.)

Petitioner then filed a Petition ["Motion"] for Review by the Arizona Court of Appeals, asserting claims based on: (a) his educational background; (b) his limited access to legal research; (c) the denial of his request to amend his Petition; (d) newly discovered evidence of innocence; (e) ineffective assistance of counsel; (f) unreliable evidence; and (g) prosecutorial misconduct.  (Exhibit EE.)

The Arizona Court of Appeals granted review, but denied relief in an unpublished Memorandum Decision (Exhibit GG).  That court rejected on procedural grounds the challenge to the denial of the motion to amend his PCR petition; the challenge to his conviction based on his education and lack of access to legal resources. The court found no reason to reject the PCR court's determination of the claims it had addressed on the merits.   The balance of the claims, the court rejected because they had not been presented to the trial court.

Petitioner then filed a Petition for Review (Exhibit HH) with the Arizona Supreme Court.  On July 25, 2014, that court summarily denied review.  (Exhibit II, Order 7/25/14.)  On September 2, 2014, the Arizona Court of Appeals issued its Mandate (Exhibit JJ).

**2.  Second PCR Proceeding**

In December, 2014, Petitioner commenced his second post-conviction review proceeding by filing a "Request for DNA Testing" pursuant to Ariz. Rev. Stat. § 13-4240 (post-conviction DNA testing) and Ariz. Rev. Stat. § 25-501 (duties of support of children). (Exhibit KK)   On December 23, 2014, the trial court denied the request. (Exhibit LL.)

Petitioner moved for reconsideration (Exhibit MM), which was denied.  (Exhibit NN, Order 1/14/15.)

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 25, 2015 (Doc. 1).   As denominated by Respondents in their Answer (Doc. 12), Petitioner's Petition asserts the following grounds for relief:

> **Ground 1:** "Ineffective assistance of counsel at pretrial and plea negotiation stages." Specifically, Portillo-Diaz alleges his trial counsel:
> a. Failed to investigate: (i) "the real biological father of the alleged victim's child" and (ii) a family court case in New Mexico that was dismissed, "in which were presented the same allegations";
> b. "[R]efused to present the vital rebuttal evidence that could help prove his client['s] innocence" and not exhausting "all the possibilities and resources available to prove [Portillo-Diaz's] innocence";
> c. Failed to contest the DNA evidence as not "trustworthy evidence";
> d. "[B]etraying his client['s] trust" when he "wrongly decided to side with [the prosecutor]" and conveyed the prosecutor's threat that if Portillo-Diaz "refused to sign the plea of no contest, the prosecutor will remove his two little daughters from the maternal custody to send both to different foster-homes with the help of the CPS personnel."
>
> **Ground 2:** "Prosecutorial Misconduct." Specifically, Portillo-Diaz alleges the prosecutor committed misconduct by:
> a. Presenting aggravating circumstances without a factual basis;
> b. Presenting an "unreliable DNA Test from the Arizona Department of Public Safety Laboratory that does not prove with total certainty that [Portillo-Diaz] is the biological father of the alleged victim's child";
> c. Threatening to remove Portillo-Diaz's "daughters from the maternal custody . . . with the help of the CPS' personnel" if he refused to sign the plea agreement; and
> d. Convincing defense counsel "to threat[en]" Portillo-Diaz to plead guilty "by telling him that the testimony of the alleged victim was enough evidence to find him guilty by a panel of jurors and that the trial's sentence will be wors[e] than that from the plea of no contest."
>
> **Ground 3**: "Reliability of evidence." In this ground, Portillo-Diaz seems to challenge the facts presented in the State's response to the petition for post-conviction relief and he contends that the police reports contain false information.
>
> **Ground 4:** "Newly discovered material facts exist which probably would have changed the verdict or sentence." In this claim, Portillo-Diaz references a case from Albuquerque, New Mexico, where he claims the judge "dismissed the case after she found that the

accusations made by J.C. against [Portillo-Diaz] of sexual abuse were totally false." He argues the Pinal County Superior Court "erred by not grant[ing] his request to present newly discovered material facts that exist which probably would have changed the verdict or sentence."

**Ground 5:** "Abuse of discretion committed by the court [to] deny Petitioner's request to amend his petition for post-conviction relief." (Answer, Doc. 12 at 23-25 (emphasis in original, citations omitted).)

The Court's Service Order (Doc. 6) appears to have inadvertently drawn a list of grounds for relief from the Petitioner's state PCR petition. Petitioner inserted that PCR petition in the midst of the instant habeas Petition (Doc. 1 at physical page 15-17), in violation of the instructions accompanying the Court's approved form, which provides:

Any exhibits you attach should be individually labeled (e.g. "Exhibit 1," "Exhibit 2," etc.) and attached at the **end** of your petition. **Exhibits should not be placed in the middle of your petition.**

*Instructions for Filing a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody in the United States District Court for the District of Arizona*, at 2, available at http://www.azd.uscourts.gov/sites/default/files/forms/2254-instructions-form.pdf, last accessed 3/11/16 (emphasis in original).)

Because Petitioner has not objected to Respondents' formulation of his claims, which the undersigned finds to generally reflect the substance of thegrounds raised by Petitioner in the Petition itself (rather than the exhibits), Respondents' formulation will be relied upon herein.

**Response** - On November 5, 2015 Respondents filed their Response ("Answer") (Doc. 12). Respondents argue that Grounds 3, 4 and 5 fail to state a cognizable ground for federal habeas relief. Respondents argue that some claims are precluded by Petitioner's no-contest plea, and that those based on challenges to his PCR proceeding are not cognizable. Respondents further argue that Grounds 1 through 4 are procedurally defaulted, and that Petitioner cannot show cause and prejudice, or actual innocence, or ineffective assistance of PCR counsel to excuse his procedural default of his claims.

**Reply** - On November 9, 2015, the Court observed the filing of the Answer, and set a deadline of December 8, 2015 for a reply. (Order 11/9/15, Doc. 13.) Petitioner has

not replied.

**Supplement** – On April 7, 2016, the Court directed Respondents to supplement the record with transcripts of the remainder of the plea colloquy and gave Respondents an opportunity to supplement their Answer to address the viability of purported express waivers of rights to bring habeas proceedings. The Order also gave Petitioner 14 days to object to the records provided or to file a limited reply to address the issues raised in the supplemental answer. (Order 4/7/16, Doc. 14.)

On April 20, 2016, Respondents complied, filing their Supplemental Answer and providing the transcript. (Doc. 15.) Petitioner has not replied.

### III.  APPLICATION OF LAW TO FACTS
### A.  NON-COGNIZABLE CLAIMS – GROUND 3, 4, AND 5
### 1.  Failure to Allege Violation of Federal Law

Respondents argue that Petitioner fails to adequately allege a violation of federal law in Grounds 3, 4, and 5. (Answer, Doc. 12 at 25, *et seq.*)

In essence, Respondents contend that these Grounds fail to state a claim on which relief may be granted. Ordinarily, the Court would have resolved such an assertion by evaluating and detailing the claims in its service Order. That determination would be the law of the case, and the undersigned would accept that determination and proceed. Here, however, the undersigned has determined that the Court has not yet addressed the claims Petitioner actually alleged in his Petition, and accordingly proceeds to evaluate Respondents' contentions on this point.

#### a.   Applicable Law

**Only Federal Claims** - The federal statutes permit habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**Adequately Stated Claims** – Summary dismissal of habeas claims is appropriate

if the claims are vague, conclusory, or patently frivolous. *Blackledge v. Allison*, 431 U.S. 63, 75-6 (1977). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

Factual Allegations - Traditional "notice pleading" does not apply in habeas petitions. "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4, Rules Governing § 2254 Cases, 1976 Advisory Committee Notes. Thus, a petitioner is obligated to include in his habeas petition "the facts supporting each ground." Rule 2(c)(2), Rules Governing § 2254 Cases. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

For purposes of determining whether a pleading (such as a habeas petition) adequately states a claim, the material allegations of the petition are taken as admitted, the petition is liberally construed in favor of the petitioner, and the petition should not be dismissed unless it appears that the petitioner could prove no set of facts in support of his claim which would entitle him to relief. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969).

Legal Theories – In addition to alleging the facts to support a claim, a habeas petitioner must "specify all the grounds for relief available to the petitioner." Rule 2(c)(1), Rules Governing § 2254 Cases. While a habeas petition need not be a legal treatise, "judges are not also required to construct a party's legal arguments for him." *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993).

**Liberal Construction** - In evaluating the cognizability of Petitioner's claims, this Court is obligated to construe Petitioner's *pro se* claims liberally. However, a liberal interpretation "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "But, in construing a complaint most favorably for the plaintiff, a court need not give a plaintiff the benefit of every conceivable doubt; rather, a court is required only to draw

1   every reasonable or warranted factual inference in the plaintiff's favor." *McKinney v. De*
2   *Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

3       Moreover, the obligation to liberally construe a *pro se* pleading applies only to
4   factual allegations, not to legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n. 9
5   (1989).

6       **Effect of Failure to State Claim** – Where a cause of action is dismissed for
7   failure to state a claim, leave to amend should be granted unless the court determines that
8   the allegation of other facts consistent with the challenged pleading could not possibly
9   cure the deficiency, amendment would be futile, or the plaintiff has failed to cure the
10  complaint's deficiencies despite repeated opportunities. *AE ex rel. Hernandez v. County*
11  *of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).

12

13      **b.   Application to Petitioner's Grounds**

14      **Ground 3** - Petitioner labels his Ground 3 "Reliability of Evidence," and argues
15  (Doc. 1 at 8 (physical page 40), *et seq.*) that the evidence regarding his inculpatory
16  statements to the arresting officers was unreliable.  He recounts the factual allegations
17  against him, including his arrest, and argues that he was having trouble understanding
18  the arresting officer, particularly after his English-speaking son was removed from the
19  vehicle, and he requested assistance of a Spanish speaking attorney, and that the officers
20  were prejudiced and demeaning and that the corroborating officer could not have heard
21  the purported statements ascribed to Petitioner.  He argues that he was wrongly indicted
22  based on false accusations from the victim, without adequate investigation, and included
23  allegations rejected by the New Mexico court, controverted by the facts, reminiscent of
24  events between the victim and her boyfriend, and internally inconsistent.  He argues that
25  the DNA testing was not conclusive, and that the boyfriend and his mother were trying to
26  avoid prosecution of the boyfriend for having sex with the under-aged victim.  Petitioner
27  concludes by arguing that the prosecutor's reliance on the false evidence and failure to
28  rely on exculpating evidence shows a "malicious prosecution, a violation of Petitioner's

constitutional rights."  (*Id.* at "8-H" (Doc. 1-2, physical page 8).)

Although Petitioner recounts a variety of factual details, the only legal theory posited by Petitioner is one of malicious prosecution.   Malicious prosecution may constitute a constitutional violation justifying a civil rights action.  *See e.g. Blankenhorn v. City of Orange,* 485 F.3d 463, 482 (9th Cir. 2007).   However, the very nature of a claim of malicious prosecution is antithetical to a habeas petition under 28 U.S.C. § 2254.   The habeas petition is generally based upon incarceration following conviction. On the other hand, "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."  *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

Indeed, here the allegations of the Petition (and the Response and the record) are unequivocal that Petitioner was convicted.   Thus, even if a claim of malicious prosecution could somehow be maintained in a habeas proceeding, the allegations of the Petition fail to include a necessary element of such a claim, but instead alleges precisely the opposite.

Thus Ground 3 fails to adequately state a claim for malicious prosecution, and must be dismissed. Because no allegations consistent with the Petition could now be made (e.g. that Petitioner was not convicted), that dismissal need not be with leave to amend, but may be with prejudice.

**Ground 4** - Petitioner labels his Ground 4 as "Newly discovered material facts exist which probably would have changed the verdict or sentence."  (Petition, Doc. 1 at "9" (Doc. 1-2, physical page 9).)    Petitioner argues that the facts on which he was convicted were presented to the New Mexico court, and the judge dismissed the case finding the accusations false, contradictory, and unreliable.  Petitioner contends that the New Mexico case file was "clear and convincing evidence that proves the Petitioner's innocence, and that the state courts were in error not to review the information. (*Id.*)

This claim fails to allege any violation of federal law.  Accordingly, it fails to state a ground upon which relief may be granted, and should be dismissed.

Moreover, as discussed hereinafter, the claim suggested by the facts alleged is one of actual innocence, which has not been recognized as a ground for habeas relief.

Further, as discussed hereinafter, Petitioner has failed to properly exhaust his state remedies on a claim of actual innocence, and has failed to proffer reliable evidence sufficient to meet the standard for such a claim, if cognizable.

Accordingly, an amendment to affirmatively allege such a claim would be futile, and the dismissal of this claim must be with prejudice.

**Ground 5** – Petitioner labels his Ground 5 as "Abuse of discretion committed by the court by deny[ing] Petitioner's request to amend his petition for post-conviction relief."  (Petition, Doc. 1 at "10" (Doc. 1-2 at physical page 10).)  Petitioner alleges that after filing his PCR petition he discovered additional grounds for relief, and moved to amend his petition.  He alleges the PCR court denied the motion because a response had already been filed.  The Arizona Court of Appeals declined to consider the grounds because they had not been raised to the PCR court.  The appellate court refused to remand the case to allow him to present the claims to the PCR court.  Petitioner alleges that his delay in raising the claims was the result of his limited legal resources and *pro se* status.  He argues that trial counsel, Mr. Gregan, failed to fulfill "his constitutional duty to prove his client['s] innocence."  (*Id.*)

PCR Errors - In so far as Petitioner asserts allegations regarding errors in the state PCR proceedings, he offers no related violation of federal law.  Accordingly, this portion of Ground 5 fails to adequately state a cognizable claim.

Moreover, errors in state PCR proceedings cannot form the basis for habeas relief. "[A] petition alleging errors in the state post conviction review process is not addressable through habeas corpus proceedings."  *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.), cert. denied, 493 U.S. 1012 (1989)

Ineffective Assistance - Petitioner does make reference to constitutional duties of trial counsel.  However, this portion of the Ground appears to be more a reference to the substance of the claims attempted to be raised in the PCR proceeding, than the assertion

of an independent claim, particularly in light of his description of the nature of the claim, and the fact that Petitioner has raised claims of ineffective assistance in Ground 1.

To the extent that Petitioner intends to assert a claim of ineffective assistance, he fails to provide any factual allegations to support the contention.  This portion of the claim is conclusory, and thus fails to adequately state a claim.

Moreover, the essence of his assertion is that counsel failed to prove him innocent.  Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88.  An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense."  *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90).    The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances.  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

The mere fact that trial counsel failed to achieve a desired result (e.g. proving a defendant innocent) does not establish ineffective assistance.   Such an outcome determinative view says nothing about the objective reasonableness of the actions undertaken by counsel in the representation.  Moreover, the prejudice prong is not solely outcome determinative, but looks at the relationship between the objectively unreasonable conduct by counsel and asks whether that conduct likely changed the outcome.  Thus, this prong incorporates causation, not just injury (e.g. conviction).

Moreover, as discussed hereinafter, Petitioner's no-contest plea precludes him from asserting a claim of ineffective assistance, except insofar as it would have rendered

his plea unknowing or involuntary.

For the foregoing reasons, any attempt to amend and add additional allegations in support of this claim would be futile.

Conclusion re Ground 5 - Accordingly, Ground 5 fails to adequately state a claim for habeas relief, is not curable by amendment, and should be dismissed with prejudice.

## 2. Free-Standing Claims of Actual Innocence

Respondents further argue that to the extent Ground 3 and 4 are intended to assert claims of actual innocence, the claims are not cognizable. Respondents argue that actual innocence has not yet been recognized as a substantive ground for habeas relief, and that Petitioner has in any event failed to meet the high standard of proof for such claims. (Answer, Doc. 12 at 26 *et seq.*)

### a. Viability of Claim

As noted by Respondents, the Supreme Court has never found a constitutional prohibition on conviction of one who is actually innocent.

> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding...This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact.

*Herrera v. Collins*, 506 U.S. 390, 400-401 (1993). At best, a majority of the Court in *Herrera* "assumed, without deciding, that execution of an innocent person would violate the Constitution." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). As recently as 2013, the Supreme Court has observed: "We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

Here, Petitioner was not sentenced to death. Accordingly, even if the *Herrera* assumption could be found to create a habeas ground for relief, it would not apply to

14

1    Petitioner.

2         In the context of a non-capital defendant, the Ninth Circuit is almost as non-

3    committal.   "We have not resolved whether a freestanding actual innocence claim is

4    cognizable in a federal habeas corpus proceeding in the non-capital context, although we

5    have assumed that such a claim is viable." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th

6    Cir. 2014).

7         Finally, the undersigned notes that Petitioner was not convicted at trial, but upon a

8    plea of no-contest.  A number of district courts in this circuit have concluded that a plea

9    forecloses the subsequent assertion of actual innocence as a substantive ground for relief.

10   *See Barclay v. Chappell*, 2014 WL 931867, at *8 (E.D. Cal. Mar. 10, 2014)

11   (enumerating cases).   The undersigned does not find the rationale of those cases

12   particularly persuasive, but as discussed hereinafter, the issue need not be resolved.

13        It might be suggested that the lack of clear authority, particularly from the

14   Supreme Court, resolves the matter, under 28 U.S.C. § 2254(d)(1) (relief only for claim

15   based on Supreme Court law).  However, it is unresolved whether this provision would

16   apply to a claim of actual innocence.  At least justices Stevens, Ginsburg and Breyer

17   have questioned this point.  *In re Davis*, 557 U.S. 952 (2009) (Stevens, J. concurring).[1]

18        Moreover, for that section to apply, the state court must have reached the merits

19   of the Petitioner's federal claim.  As discussed hereinafter, the undersigned concludes

20   that no federal claim of actual innocence was presented to the state courts.

21        Ordinarily, that would leave this court to resolve whether such a claim exists.

22   However, precedent suggests an alternative: "Also, even where an actual innocence

23   claim has been filed, *Herrera, House, Carriger*, and *Jackson* all support the practice of

24   first resolving whether a petitioner has made an adequate evidentiary showing of actual

25   innocence before reaching the constitutional question of whether freestanding innocence

26

27   [1] Justice Stevens went on to question further whether § 2254(d)(1) could be
     constitutionally applied in a capital case.  "Even if the court finds that § 2254(d)(1)
28   applies in full, it is arguably unconstitutional to the extent it bars relief for a death row
     inmate who has established his innocence." *Davis*, 557 U.S. 952.

claims are cognizable in habeas."   *Osborne v. Dist. Attorney's Office for Third Judicial Dist.*, 521 F.3d 1118, 1131 (9th Cir. 2008) *rev'd and remanded on other grounds,* 557 U.S. 52  (2009).

Accordingly, for purposes of this Report and Recommendation, the undersigned will presume that Petitioner's free-standing, substantive claim of actual innocence is a recognizable claim.

The exhaustion and merits of the claim will be addressed hereinafter, after consideration of all other potential grounds for relief.

## B.  WAIVER BY PLEA

Respondents contend that portions of Ground 1 (ineffective assistance) and 2 (prosecutorial misconduct) are not cognizable because Petitioner waived them when he entered a plea of no contest and/or by the terms of his plea agreement.  (Answer, Doc. 12 at 30, *et seq.*; Supplemental Answer, Doc. 15).

## 1.  Applicable Law

### a.   Waivers Resulting from Plea

Some constitutional rights are automatically waived by entering an unconditional guilty plea. Such rights include, among others, the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), as well as the right to challenge constitutional defects which occur before entry of the plea. *United States v. Broce*, 488 U.S. 563, 573-74 (1989).  A guilty plea breaks the chain of events that proceeded it in the criminal process. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Once a defendant enters a valid guilty plea, he can no longer raise a claim of violation of constitutional rights that arose prior to the plea.  *Id*. at 267; *United States v. Benson*, 579 F.2d 508, 510 (9th Cir. 1978).

However, "[w]here, as here, a defendant is represented by counsel during the plea

process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "As we explained in [*Tollett*], a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel  was not within the standards set forth in *McMann*.'" *Id.   But see United States v. Garcia-Valenzuela,* 232 F.3d 1003, 1005 (9th Cir. 2000) (detailing other exceptions to the waiver implicit in a guilty plea, including claims of vindictive prosecution, double jeopardy, defective indictment, vague statute, selective prosecution, judicial disqualification).

Here, of course, Petitioner did not plead guilty, but pled "no contest."

In *Lefkowitz v. Newsome*, 420 U.S. 283 (1975), the Court applied *Tollett* to habeas claims regarding a motion to suppress by a New York defendant who had pled no contest.  The Court observed that under New York law, a defendant retained the right to appeal on such challenges despite the entry of a no contest plea.  The Court noted that the "availability of federal habeas corpus depends upon functional reality, not upon an infatuation with labels." *Id.* at 290, n. 7.  Because of New York's choice to preserve such claims after such a plea, "[i]n this respect there is no meaningful difference between Newsome's conviction and a New York conviction entered after a trial." *Id.* at 290. Accordingly, Newsome was free to raise those claims on habeas review despite his plea.

Respondents contend, in essence, that because Arizona treats a plea of no contest the same as a guilty plea, this Court should apply the limitations of *Tollett* to such a plea. Indeed, the Ninth Circuit has applied the *Tollett* bar to "no contest" or "*nolo contendre*" pleas where the state court treated the pleas comparably.  In *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir.), *cert. denied*, 113 S.Ct. 225 (1992), the Ninth Circuit applied *Tollett* to a *nolo contendre* plea in an Alaskan prosecution, after noting that the Alaskan court had deemed the plea to have "waived all such defects occurring prior to the plea." *Id.* at

136.  *Cf. Gomez v. Berge*, 434 F.3d 940, 942–43 (7th Cir. 2006) (applying *Tollett* to no contest plea in state court without evaluation of the treatment of the plea under state law).

Respondents' contention that "Arizona treats no-contest pleas as equivalent to guilty pleas," (Answer, Doc. 12 at 31), is somewhat over-simplified.  For example, Arizona follows the traditional rule that "[u]nlike a plea of guilty, however, a plea of no contest properly accepted cannot be admitted against the defendant in any civil or criminal action or administrative proceeding." *State v. Stewart*, 131 Ariz. 251, 254, 640 P.2d 182, 185 (1982).  Nonetheless, Arizona has held that "[t]he consequences of a no contest plea parallel closely the results following a plea of guilty." *State v. Herrera*, 123 Ariz. 258, 259-60, 599 P.2d 214, 215-16 (1979).  And more importantly for purposes of applying *Tollett* and *Lefkowitz*, Arizona has long held "that when a defendant enters a plea of no contest he waivers, as is true with respect to a guilty plea, all non-jurisdictional defenses preceding the entry of the plea, and he may not by express stipulation or otherwise, reserve for appeal non-jurisdictional defects under such a plea." *State v. Arnsberg*, 27 Ariz. App. 205, 207, 553 P.2d 238, 240 (1976).  "Likewise, a plea of no contest constitutes a waiver of nonjurisdictional defenses." *State v. Canaday*, 116 Ariz. 296, 296, 569 P.2d 238, 238 (1977) (Supreme Court *en banc*) (citing *Arnsberg*).

Thus, unlike the defendant in *Lefkowitz*, Petitioner's proper expectation under Arizona law when he entered his no contest plea was that he would be foreclosed from challenging non-jurisdictional, pre-plea constitutional violations. Thus the functional result of his no contest plea was to break the chain of events between any such violations and his conviction.  Accordingly, *Tollett* applies to bar Petitioner's pre-plea claims.

### b.   Waivers Resulting from Plea Agreement

In addition to the waivers implicit in a plea of no contest, Petitioner made explicit waivers of his rights of review in his plea agreement.  That agreement provided in paragraph six:

> Unless the plea is rejected by the court or withdrawn by either party, the Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement. By entering into the agreement, the Defendant hereby gives up his right of appeal.

(Exhibit F, Plea Agreement at 3.)

The Ninth Circuit regularly enforces in federal prosecutions "knowing and voluntary" waivers of appellate rights in criminal cases, provided that the waivers are part of negotiated guilty pleas, *see United States v. Michlin*, 34 F.3d 896, 898 (9th Cir.1994), and do not violate public policy, *see United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996) (cataloguing public policy exceptions).  Similarly, the right to collateral review may be waived.   *See United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993). Such waivers usefully preserve the finality of judgments and sentences imposed pursuant to valid plea agreements. *See Baramdyka*, 95 F.3d at 843.

In *Lemke v. Ryan*, 719 F.3d 1093 (9th Cir. 2013), the Ninth Circuit held that almost waiver language which was almost identical to that in Petitioner's Plea Agreement did not amount to a waiver of a procedural right to collateral attack, including federal habeas review. "Our circuit precedent makes clear, however, that a waiver of collateral attack must be express, and that a plain waiver of appeal does not suffice." *Lemke v. Ryan*, 719 F.3d 1093, 1096 (9th Cir. 2013).

The court went on to consider whether the language resulted in the waiver of claims as a substantive matter.  The court concluded that "the waiver appears to be limited to matters arising in the trial court apart from any collateral attack." *Id.* at 1098. Construing the ambiguity against the drafter (the State), the court opined that it was unconvinced that the waiver language was sufficient to bar collateral review of the claim (in that case a double jeopardy claim).  Nonetheless, the court declined to rule on that basis, disposing of it instead on the merits "without conclusively resolving the waiver issue." *Id.* at 1099.

Respondents argue that this *dicta* in *Lemke* does not apply to this case because:

(1) his plea waived his pre-plea non-jurisdictional claims; and (2) that the plain language of the plea agreement amounted to a waiver.  With regard to the latter, Respondents argue that Grounds 1(a)-(c) and 2(a)-(b) are "objections" waived by the "plain language" of the Plea Agreement.  Respondents argue that *Lemke* made no final determinations on the effectiveness of the language as a waiver, and is in any event distinguishable because Respondents "do not assert that the plea agreement itself operated to generally waive collateral review," but instead rely on the preclusive effect of the no-contest  plea, and the waiver of "objections."  (Doc. 15 at 7-8.)

As argued by Respondents, and concluded hereinabove in the preceding subsection, *Lemke* leaves undisturbed the general preclusive effect of the guilty plea itself. Here, however, the primary question is whether the express terms of the plea agreement amounted to a waiver of Petitioner's right to maintain the instant proceeding, including any claims which would survive the waiver implicit in the guilty plea.  Based on the reasoning of *Lemke* (albeit in *dicta*), the undersigned must conclude that the waiver in Petitioner's plea agreement did not waive his procedural right to bring the instant habeas petition or to assert the claims raised herein.

It is true that *Lemke* dealt with the unique nature of a double jeopardy claim, a claim which the *Lemke* court observed is by nature jurisdictional, and thus is not ordinarily foreclosed by a simple guilty plea.  Similarly, however, claims which go to the voluntariness of a plea survive the plea.

Respondents argue that the waiver of "objections" resulted in the waiver of all claims.  The undersigned does not find the raising of constitutional claims in a habeas proceeding to be the equivalent of an "objection" as that term is found in Petitioner's Plea Agreement.  An "objection" is defined as follows:

> **objection** n.  (18c)  1. A formal statement opposing something that has occurred, or is about to occur, in court and seeking the judge's immediate ruling on the point. • The party objecting must usu. state the basis for the objection to preserve the right to appeal an adverse ruling.

OBJECTION, Black's Law Dictionary (10th ed. 2014).  *See* Restatement (Second) of

Contracts § 202(3)(b) (1981) ("technical terms and words of art are given their technical meaning when used in a transaction within their technical field"); and *Bank of Am. v. J. & S. Auto Repairs*, 143 Ariz. 416, 418, 694 P.2d 246, 248 (1985) ("In the absence of contrary authority Arizona courts follow the Restatement of the Law.").

Thus, in its ordinary usage in the context of legal proceedings, an "objection" is a contemporaneous attack before the trial court, not an attack mounted in a subsequent proceeding. Respondents provide no basis for any other reading. Indeed, if the term "objection" were read as broadly as Respondents do, the trial court's advice to Petitioner that he retained a right to file a post-conviction relief petition would have been contradictory and misleading. (*See* Exhibit S1-A, R.T. 8/16/11 at 3.)

Based on the foregoing, the undersigned finds no effective waiver of Petitioner's right to bring the instant habeas petition or the claims raised herein (except to the extent they were waived solely by virtue of Petitioner's no-contest plea).

## 2. Application to Petitioner's Claims

**Grounds 1(a)-(c)** – In Ground 1, Petitioner complains of ineffective assistance of counsel. More particularly, Ground 1(a) challenges a failure to investigate, Ground 1(b) challenges a (i) failure to investigate and (ii) present evidence of Petitioner's innocence, and Ground 1(c) challenges the failure to contest DNA evidence. Petitioner argues that as a result of such ineffectiveness, he was "forced to sign a plea of no contest." (Petition, Doc. 1 at 6-B.)

With the exception to the extent that Ground 1(b)(ii) relates to a failure to present evidence of innocence to the court (as opposed to failure to present and advise Petitioner about such evidence), each of these claims goes to the voluntariness of Petitioner's plea, and thus survives his plea. *See e.g. Lambert v. Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004) (claims of failure to advise and investigate survived plea).

The failure to present evidence of innocence to the trial court was waived by Petitioner's foregoing his right to trial and entering a no-contest plea.

**Ground 1(d)** – In Ground 1(d), Petitioner asserts ineffective assistance regarding threats of removing Petitioner's daughters from their mother, which coerced him into pleading.  Respondents do not argue that this claim was waived.

**Grounds 2(a)-(b)** – In Ground 2, Petitioner argues that the prosecutor engaged in misconduct.   In Ground 2(a), he asserts the prosecutor improperly presented in the State's Allegations of Aggravating Circumstances (Exhibit B) various aggravating circumstances without a factual basis.   In Ground 2(b), he asserts the prosecutor presented unreliable DNA evidence on the paternity.  These claims attack the allegations levied by the prosecution, thus involve errors arising prior to the entry of Petitioner's plea, and because they do not assert ineffective assistance of counsel, they were waived by his guilty plea. *Tollett*, 411 U.S. at 267.

To the extent that Petitioner argues in Ground 2 that trial counsel was ineffective in failing to challenge the DNA evidence, that claim will be addressed in connection with the same claim in Ground 1(a).

**Grounds 2(c)-(d)** – In Ground 2(c), Petitioner argues that the prosecutor threatened to remove his daughters from maternal custody if he did not plead.  In Ground 2(d) he argues the prosecutor convinced trial counsel to threaten Petitioner with a conviction and a harsher sentence if he did not plead.  Respondents do not argue in their Answer (Doc. 12 at 34) and their Supplemental Answer (Doc. 15) that these claims were waived.

**Grounds 3, 4 and 5** – Because the undersigned concludes hereinabove that Grounds 3 and 4 (with the exception of substantive actual innocence) and 5 fail to state cognizable grounds for relief, the waiver of these claims is not addressed.

**Conclusion**  Based upon the foregoing, the undersigned concludes that Petitioner's no-contest plea waived his claims in Grounds 1(b)(ii) (failure to present evidence to trial court), 2(a) (misconduct re aggravating factors) and 2(b)(misconduct re DNA), and these claims must be dismissed with prejudice.

## C.  EXHAUSTION AND PROCEDURAL DEFAULT

Respondents contend that Petitioner has procedurally defaulted on his claims in Grounds 1 through 4.  Because the undersigned has concluded that Grounds 3 and 4 (with the exception of substantive actual innocence), and Ground 5 are plainly not cognizable, and that Grounds 1(b)(ii), 2(a) and 2(b) were plainly waived by Petitioner's plea, the procedural default of these claims in not addressed.   Accordingly, the undersigned addresses only the exhaustion and procedural default of Grounds 1(a), 1(b)(i), 1(c), and 1(d), and Grounds 2(c) and 2(d), and Petitioner's claim of substantive actual innocence.

## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, to exhaust his state remedies, the petitioner must have fairly presented his federal claims to the state courts.  "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a

petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state

case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).


**2.  Procedural Default**

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R.

Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 12 at 38-39.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to

counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance.  *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the

impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.

f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.

Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding, although it would apply to his claims of substantive actual innocence in Grounds 3 and 4.

Therefore, with the exception of such substantive actual innocence claim, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's procedural claims that were not fairly presented are all now procedurally defaulted.

**3. Procedural Bar on Independent and Adequate State Grounds**

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds. "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has]

declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

**Waiver Bar** - Petitioner fails to proffer anything to suggest that Rule 32.2(a) is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The federal courts have routinely held that it is. "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.) *cert. denied*, 135 S. Ct. 710 (2014).  *See also Stewart v. Smith*, 536 U.S. 856, 861 (2002) (Arizona's waiver rule is independent of federal law); and *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (adequate because consistently and regularly applied).

**Timeliness Bar** – Similarly, Petitioner fails to proffer anything to suggest that Rule 32.4 is not an independent and adequate state ground, sufficient to bar federal habeas review of claims a defendant could have but did not raise on direct appeal.  The district courts in Arizona have held that it is.  *See e.g. Morgal v. Ryan*, 2013 WL 655122, at *16 (D. Ariz. Jan. 18, 2013) *report and recommendation adopted*, 2013 WL 645960 (D. Ariz. Feb. 21, 2013).

//

//

//

**4.  Application to Petitioner's Claims**

**a.   Ground 1(a) – IAC re Paternity and New Mexico Prosecution**

In Ground1(a) of his Petition, Petitioner argues that the trial counsel provided ineffective assistance by failing to investigate: (i) "the real biological father of the alleged victim's child" and (ii) a family court case in New Mexico that was dismissed, "in which were presented the same allegations".  (Petition, Doc. 1 at 6.)

Respondents argue that Ground 1(a)(i) was first raised to the Arizona Supreme Court, and Ground 1(a)(ii) was never previously raised to the state courts.  Respondents argue both are procedurally defaulted.  (Answer, Doc. 12 at 42-43.)

Petitioner does not reply.

Respondents read Petitioner's **Ground 1(a)(i)** too narrowly, focusing on investigation of the biological father.  Rather the plain import of Petitioner contention is that defense counsel failed to conduct adequate investigation with regard to the DNA evidence on paternity.   He argues: "Petitioner made another request to Mr. Gregan, he wanted to contend the DNA Test presented by the Prosecutor, because was not a trustworthy evidence against him by the simple fact that he never had any sexual contact with the alleged victim."  (Petition, Doc. 1 at 6-A to 6-B.)

In his PCR Petition, Petitioner raised a 6th Amendment claim of ineffective assistance of counsel under *Strickland v. Washington*.  (Exhibit Q at 20-21.)   In particular, he complained that counsel, *inter alia*, failed to assert a "collateral estoppel" claim (*id.* at 19), failed to investigate (*id.* at 20), failed to pursue claims based on speedy trial, prosecutorial misconduct, and abuse of discretion (*id.* at 21), coerced him into pleading guilty by threatening him with a harsh sentence (*id.* at 22, 25), and failure to pursue challenges based on double jeopardy, improper amendment of the indictment, ex post facto, and other un-enumerated claims.  (*Id.* at 22-24.)

Petitioner did not, however, argue that counsel was ineffective for failing to investigate the DNA evidence.  At most, in his conclusion, Petitioner made a passing reference to his own disputing of the DNA evidence:

> That defendant had replaced [his original attorney], by another who coerced him with threats of what he, the defense attorney would do, if he didn't follow through, aside the defendant would receive the maximum sentence of 34 years, if not more by aggravating circumstances.  Because the evidence from the DNA test proved he was the biological father. (Which is false information. The test only showed probability because Javier was hispanic compared to. But no result confirmed a 99.9% (per cent) proof.)

(Exhibit Q at 25.)  This was not fair presentation of a claim that counsel was ineffective in failing to conduct additional investigation or to challenge the DNA evidence.  At best, it suggested that Petitioner had simply concluded that the DNA evidence was wrong.

In his "Motion for Review" to the Arizona Court of Appeals, Petitioner again raised a 6th Amendment claim of ineffective assistance of counsel.  (Exhibit EE at 8.)  In particular, he argued that trial counsel failed to challenge the paternity, and coerced Petitioner into pleading no contest.

> Trial counsel made errors so serious like to deny the appellant's request for a deep research on the victim's alleged accusations. Mainly her claim about appellant's paternity of her child.

(*Id.*)  This was a presentation of the heart of Petitioner's claim in Ground 1(a)(i).

The Arizona Court of Appeals acknowledged that Petitioner had raised some claims of ineffective assistance:

> Portillo-Diaz then filed a pro se petition raising various claims, including that his trial counsel had been ineffective for failing to present certain "legal and constitutional defenses" and that he had entered his plea under duress because counsel had told him he "would receive the full maximum sentence" if he went to trial "because no jury would ever believe his story."

(Exhibit GG, Mem. Dec. at 2.)  But, the Arizona Court of Appeals also declined to address other claims because they were not properly raised in the PCR court, including the claim of ineffective assistance regarding failure to investigate the DNA testing to refute paternity.  (*Id.* at 3.)

Thus, Petitioner presented this claim to the Arizona Court of Appeals, which rejected the claim for failure to present it to the trial court, as required by Arizona Rule of Criminal Procedure 32.9(c)(1)(ii).  (Exhibit GG, Mem. Dec. at 3-4.)

Respondents contend this was the application of an independent and adequate

31

state bar.    Petitioner proffers nothing to suggest that Rule 32.9(c)(1)(ii) is not independent and adequate.  The undersigned find that it is.

Accordingly, Petitioner was procedurally barred from presenting Ground 1(a)(i) on an independent and adequate state ground.

With regard to **Ground 1(a)(ii)**, Petitioner did not present a claim to the PCR court regarding a failure by defense counsel to investigate the New Mexico dismissal. At most, Petitioner argued in his factual background that the New Mexico case had been dismissed for lack of evidence (Exhibit Q at 3, 11), and asserted counsel's failure to pursue collateral estoppel and double jeopardy claims (*id.* at 19, 22).  Petitioner did not, however, repeat those claims to the Arizona Court of Appeals, nor did he raise the ineffective assistance claim in Ground 1(a)(ii) of failure to investigate the New Mexico case.  Accordingly, Ground 1(a)(ii) was not fairly presented to the Arizona Court of Appeals, and for the reasons discussed hereinabove, that claim is now procedurally defaulted.

### b.  Ground 1(b) – IAC re Innocence

In Ground 1(b)(i), Petitioner argues that trial counsel was ineffective for not investigating and advising Petitioner on evidence of Petitioner's innocence.

Respondents argue that Ground 1(b)(i) was only presented to the Arizona Court of Appeals, and not to the PCR court, and has been procedurally barred on an independent and adequate state ground.  (Answer, Doc. 12 at 41.)

Petitioner did argue to the PCR court that there was no evidence to corroborate the victim's accusations, and that trial counsel had a duty to investigate. (Exhibit Q at 19, 20.)    However, Petitioner did not argue that there was affirmative evidence of his innocence (beyond the DNA testing addressed in Ground 1(a)(i)).  Neither did Petitioner raise to the Arizona Court of Appeals an assertion that trial counsel failed to investigate evidence of innocence beyond the DNA testing.  (Exhibit EE at 8-9.)

Accordingly, the undersigned concludes that this claim was not fairly presented to

the PCR court and the Arizona Court of Appeals.  For the reasons discussed hereinabove, this claim is now procedurally defaulted.

### c.   Ground 1(c) – IAC re Unreliability of DNA Evidence

In Ground 1(c), Petitioner argues that trial counsel was ineffective for failing to challenge the unreliability of the DNA evidence.

Respondents argue that Ground 1(c) was only presented to the Arizona Court of Appeals, and not to the PCR court, and has been procedurally barred on an independent and adequate state ground.  (Answer, Doc. 12 at 41.)

As discussed in connection with Ground 1(a)(i), Petitioner did fairly present claims based on trial counsel's failure to investigate the DNA evidence.  Because this portion of Ground 1 is duplicate of Ground 1(a)(i) it will be addressed on the merits with that claim.

### d.   Ground 1(d) – IAC re Coercion

In Ground 1(d), Petitioner argues that counsel was ineffective by conveying the prosecution's coercive threat to have his daughters removed from the maternal home.

Respondents argue that Ground 1(d) was only presented to the Arizona Court of Appeals, and not to the PCR court, and has been procedurally barred on an independent and adequate state ground.  (Answer, Doc. 12 at 41.)

Petitioner did argue in his PCR petition that trial counsel had coerced him by threatening him with a harsh sentence.  (Exhibit Q at 22, 24.)  But he made no reference in that Petition to threats regarding removal of the children.

In his Motion for Review, Petitioner argued in connection with his newly discovered evidence claim that "trial counselor and the prosecutor coerced and forced the appellant to sign up the plea agreement under the threat to remove appellant's daughters from their mother['s] custody to a foster home."   (Exhibit EE at 7.)  With regard to his claim of ineffective assistance, Petitioner argues generically that "trial counselor helped

the unethical behavior of the prosecutor to coerce and to force the appellant to sign up the plea agreement." (*Id.* at 8.) Thus, Petitioner presented this claim to the Arizona Court of Appeals, which rejected the claim for failure to present it to the trial court, as required by Arizona Rule of Criminal Procedure 32.9(c)(1)(ii). (Exhibit GG, Mem. Dec. at 3-4.)

Respondents contend this was the application of an independent and adequate state bar.   Petitioner proffers nothing to suggest that Rule 32.9(c)(1)(ii) is not independent and adequate.  The undersigned find that it is.

### e.   Ground 2(c) – Prosecutorial Misconduct re Custody

In Ground 2(c), Petitioner argues that the prosecutor engaged in misconduct by threatening "to remove the Petitioner's little daughters from the maternal custody…with the help of the CPS' personnel" if he refused to sign the plea agreement. (Petition, Doc. 1 at 7-A.)

Respondents argue that this claim was presented only to the Arizona Court of Appeals, which disposed of it on the basis of Arizona Rule of Criminal Procedure 32.9(c)(1)(ii), an independent and adequate state ground.

In his PCR petition, Petitioner argued that the prosecutor had engaged in misconduct by: (1) pursuing charges despite the dismissal in New Mexico (Exhibit Q at 16-19); and (2) failure to disclose the prior dismissal in violation of *Brady* (*id.* at 21).  In his Motion for Review, he argued in his "Newly Discovered Material Facts" section that the "prosecutor coerced and forced the appellant to sign up the plea agreement under the threat to remove appellant's daughters from their mother['s] custody." (Exhibit EE at 7.) Thus, the appellate court disposed of the claims of coercion by finding them barred under Rule 32.9(c)(1)(ii) for not having presented them to the PCR court.  (Exhibit GG at 3-4.)

Thus, Ground 2(c) was procedurally barred on an independent and adequate state ground.

### f.   Ground 2(d) – Prosecutorial Misconduct re Convincing Counsel

In Ground 2(d) Petitioner argues that the prosecution engaged in misconduct by convincing defense counsel "to threat[en]" Petitioner to plead guilty "by telling him that the testimony of the alleged victim was enough evidence to find him guilty by a panel of jurors and that the trial's sentence will be wors[e] than that from the plea of no contest." (Petition, Doc. 1 at 7-A.)

Respondents argue this claim was not presented to any state court and is procedurally defaulted.  (Answer, Doc. 12 at 45.)

Indeed, Petitioner made no argument to either the PCR court or the Arizona Court of Appeals of prosecutorial misconduct founded upon some interference by the prosecution with defense counsel.  Accordingly, this claim was not fairly presented, and for the reasons discussed hereinabove, is now procedurally defaulted.


### g.   Ground 3 and 4 Substantive Actual Innocence

Although Petitioner has argued various evidentiary defects to the PCR court and the Arizona Court of Appeals in his PCR petition for review, he never raised a federal claim of substantive actual innocence.  *See Neville v. Dretke*, 423 F.3d 474, 479 (5th Cir. 2005) (requiring exhaustion of claim of substantive actual innocence).  Accordingly, this claim is unexhausted.  However, as noted above in Section III(C)(2), such claim is not procedurally defaulted because it qualifies under Arizona Rule of Criminal Procedure 32.1(h).

Accordingly, this claim should ordinarily be dismissed as unexhausted.  However, 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  However, "a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623-624 (9th

Cir. 2005).

Because Petitioner's claim of substantive actual innocence is plainly without merit, the undersigned will address the claim on its merits.

### h.   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) Ground 1(b)(i) (IAC re investigation re innocence); (2) Ground 2(d) (prosecutorial misconduct re convincing counsel).

Further, Petitioner has failed to exhaust his state remedied on his claims of substantive actual innocence, but the claims may be disposed of on its merits.

Finally, based on the foregoing, the undersigned concludes that Petitioner was procedurally barred on independent and adequate state grounds from asserting: (1) concludes that Petitioner properly exhausted his remedies as to Ground 1(a)(i) and 1(c) (IAC re DNA paternity testing); Ground 1(d) (IAC re coercion); and Ground 2(c) (prosecutorial misconduct re custody).

### 5.  Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not

36

> reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner makes no assertions of cause and prejudice.  (*See* Petition, Doc. 1 at 6, 7, 8, 9 and 10.)   The undersigned finds no basis for cause to excuse Petitioner's procedural defaults and procedural bars.

## 6. Actual Innocence

**Applicable Standard** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).   Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

**Application to Petitioner** - In Ground 3, Petitioner argues that evidence

regarding his confession to the arresting officers was unreliable because of a language barrier, bias on the part of the officers, his lack of counsel, and limits on the officer's ability to hear Petitioner.  Assuming those assertions to be true, that does not establish Petitioner's actual innocence.  At best, it calls into question the reliability of the evidence against him.

Petitioner makes bald assertions that the victim made false accusations, controverted by the facts, reminiscent of events between the victim and her boyfriend, and internally inconsistent, but Petitioner offers no new reliable evidence that the accusations were in fact false. Again, he simply attacks the reliability of the evidence against him.

He argues that the victim's boyfriend and his mother were trying to avoid prosecution of the boyfriend for having sex with the under-aged victim.  But he proffers no new reliable evidence to support that contention.

He argues that the DNA testing was not conclusive.  The tests reported a high degree of probability that Petitioner was the father of the victim's child, but not absolute certainty. (Petition, Affidavit, Exhibit 4, Doc. 1-2 at "14", physical page 33.)  But DNA testing is at its heart only a determination of a statistical probability, and not a conclusive determination.  "[F]orensic DNA testing uses statistical modeling to establish that two unrelated individuals would share all the markers." 2 Crim. Prac. Manual § 73:41 (DNA Evidence – Statistical Probabilities). According to the DNA report, it is "7.2 million times more likely [that Petitioner was the father of the victim's child] than if a random, unrelated Caucasian mail is the father, 41 million times more likely than if a random, unrelated African-American male is the father, and 18 million times more likely than if a random, unrelated Hispanic male is the father." (*Id.*)  Even if not conclusive, the DNA testing is still evidence of Petitioner's guilt, and not his innocence.

Petitioner has regularly argued that a new DNA test would establish his innocence.  However, he proffers no reason (other than his own protestations of innocence) to expect a result different from the DNA test performed in June, 2010.  For

example, he does not suggest that the original testing was somehow flawed. Accordingly, this amounts to nothing more than speculation by Petitioner.

He contends in both Grounds 3 and 4 that the allegations were rejected by the New Mexico court. Without evidence to support it, or support in the record, Petitioner argues that the New Mexico judge found the accusations false, contradictory, and unreliable.

Petitioner presents nothing to suggest that the offenses for which he was convicted in this case were the subject of the New Mexico prosecution. The documents he provides from New Mexico show a prosecution for violating a protective order and failure to appear, nothing with regard to sexual conduct with the victim. (Petition, Affidavit, Exhibit 3, Doc. 1-2 at "15", physical page 28.) It does appear that the order of protection was sought on the basis of the allegations of the sexual misconduct. (Exhibit Q, PCR Pet., Exhibit 3, Application for Emergency Order of Protection.) But Petitioner proffers nothing to suggest that the New Mexico court would have resolved the veracity of the allegations underlying the order of protection in the course of deciding whether Petitioner had violated that order. Indeed, the reasons given for the termination in the records provided by Petitioner is that the matter was dismissed on March 16, 2011 because the "Pros[ecution was] Unable to Proc[eed]." (Petition, Affidavit, Exhibit 3, Doc. 1-2 at "18", physical page 31.) By that time, Petitioner had long been extradited to Arizona, where he was arraigned on November 26, 2010. (Exhibit DD, Order 9/26/13 at 2.)

Even assuming that the New Mexico judge had concluded the accusations were false, that would show only that whatever was placed before that court was not sufficient to proceed. Again, that might go to the sufficiency of the evidence of guilt (at least before that court), but would do nothing to affirmatively establish Petitioner's innocence. At best, it is the opinion of one person (albeit a judge) that whatever evidence may have been presented before that court was not sufficient to proceed. But it does not provide any evidence that Petitioner is actually innocent.

In sum, there is no "new and reliable physical evidence, such as DNA, that would preclude any possibility of [Petitioner's] guilt." *Carriger*, 132 F.3d at 477. *See e.g. House*, 547 U.S. at 554-555 (DNA testing of semen); *Jackson v. Calderon*, 211 F.3d 1148 (9th Cir. 2000) (expert medical testimony that petitioner lacked requisite mental capacity due to intoxication with PCP). Nor is there any new testimony from multiple disinterested witnesses, supported by independent evidence, implicating a different suspect. *See House*, 547 U.S. at 548-553.

Petitioner fails to make a showing that no reasonable juror would have found him guilty. Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## D. SUBSTANTIVE ACTUAL INNOCENCE

As discussed *supra* in Section III(A), Respondents argue that to the extent Ground 3 and 4 are intended to assert claims of actual innocence, the claims are without merit. (Answer, Doc. 12 at 26 *et seq.*) The undersigned has presumed for purposes of this Report and Recommendation, that Petitioner's free-standing, substantive claim of actual innocence is a cognizable claim. And although finding the claim unexhausted, the undersigned has concluded that it may be disposed of on its merits under 28 U.S.C. § 2254(b)(2).

**Standard for Free-Standing Actual Innocence** - The *Carriger* court found no established standard for a claim of actual innocence, and adopted the following from Justice Blackmun's dissent in *Herrera*: "a habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." 132 F.3d at 476. The court observed that this was a greater standard than the "actual innocence" showing required under the "*Schlup* gateway" for consideration of a procedurally defaulted claims. *Id.* at 477-478.

In rejecting the claim of actual innocence, the *Carriger* court observed:

Carriger has not met this burden. Although the postconviction

40

1
2
3
4
5
6
7

> evidence he presents casts a vast shadow of doubt over the reliability of his conviction, nearly all of it serves only to undercut the evidence presented at trial, not affirmatively to prove Carriger's innocence. Carriger has presented no evidence, for example, demonstrating he was elsewhere at the time of the murder, nor is there any new and reliable physical evidence, such as DNA, that would preclude any possibility of Carriger's guilt. Although Dunbar's confession exonerating Carriger does constitute some evidence tending affirmatively to show Carriger's innocence, we cannot completely ignore the contradictions in Dunbar's stories and his history of lying. Accordingly, the confession by itself falls short of affirmatively proving that Carriger more likely than not is innocent. Carriger's freestanding claim of actual innocence must fail.

8   *Carriger v. Stewart*, 132 F.3d 463, 477 (9th Cir. 1997).

9   **Application to Petitioner** - Petitioner's allegations in Ground 3 and 4 fail to meet

10  the standard under the *Schlup* gateway, and thus cannot meet the higher standard under

11  *Herrera*.

12  To be sure, Petitioner identifies a laundry list of evidence that he asserts

13  demonstrates defects in the prosecution's evidence. But that is not sufficient. "Evidence

14  that merely undercuts trial testimony or casts doubt on the petitioner's guilt, but does not

15  affirmatively prove innocence, is insufficient to merit relief on a freestanding claim of

16  actual innocence." *Jones*, 763 F.3d at 1251.

17  Accordingly, assuming that Grounds 3 and 4 are intended to assert a claim of

18  actual innocence, Petitioner fails to support the claim with allegations of new reliable

19  evidence of his actual innocence. Thus, any such claim is plainly without merit, would

20  have to be denied.

21
22  **E. SUMMARY**

23  Petitioner's claims in Grounds 3 (Reliability of Evidence) and 4 (Newly

24  Discovered Material Facts) (except to the extent the assert claims of substantive actual

25  innocence), and Ground 5 (Denial of PCR Motion to Amend) fail to state a claim

26  cognizable on federal habeas review, are not curable by amendment, and must be

27  dismissed with prejudice.

28  Petitioner's claims in Grounds 1(b)(ii) (IAC re Presentation of Innocence), 2(a)

41

(Prosecutorial Misconduct re Aggravating Circumstances) and 2(b) (Prosecutorial Misconduct re DNA) are waived by Petitioner's no-contest plea, and must be dismissed with prejudice.

Petitioner's claims in Grounds 1(a)(ii) (IAC re New Mexico Case), 1(b)(i) (IAC re Investigation of Innocence) and 2(d) (Prosecutorial Misconduct re Convincing Counsel), are procedurally defaulted and must be dismissed with prejudice.

Petitioner's claims in Ground 1(a)(i) and 1(c) (IAC re DNA Paternity Testing), Grounds 1(d) (IAC re Coercion), and Ground 2(c) (Prosecutorial Misconduct re Custody) were procedurally barred on independent and adequate state grounds, and must be dismissed with prejudice.

Finally, assuming such claims are cognizable, Petitioner's claims of actual innocence in Grounds 3 and 4 are plainly without merit and must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the substantive actual innocence claim in Grounds 3 and 4 of Petitioner's Petition for Writ of Habeas Corpus, filed June 25, 2015 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed June 25, 2015 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: June 1, 2016

15-1172r RR 16 03 10 on HC.docx

James F. Metcalf
United States Magistrate Judge

44